COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                          NO.
02-07-273-CR

 

 

ANTHONY RAY NEWSOME                                                   APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

         FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

I.  Introduction

In one point, Appellant
Anthony Ray Newsome contends that the trial court erred by failing to grant his
motion to suppress his oral statement given at a hospital to a police
officer.  We affirm.

 








II.  Factual and Procedural History

In September 2005, Officer
Petty, while at Arlington Memorial Hospital on an unrelated matter, noticed
Newsome=s arrival at the hospital and that he was bleeding profusely.  The officer stated the man had a bloody towel
held up to his neck while blood was coming down his shirt.  A doctor informed Officer Petty that Newsome
had been shot.  Officer Petty contacted
dispatch to find out if any shootings had been reported but none had been at
the time.  He then spoke with Newsome to
find out what had happened.  He learned
his name and birthday and Newsome informed him that he had been shot by a white
man at a Kroger store.  After contacting
dispatch again, Officer Petty learned that an unidentified male had attempted
to rob an elderly man in a Tom Thumb parking lot only to be shot three times by
the victim.[2]









Officer Petty also questioned
Newsome about where he was when he had been shot but Newsome was unsure.  Because of the seriousness of Newsome=s injuries, Officer Petty was unable to question him any further.  Newsome was not placed under arrest at that
time nor given his Miranda warnings. 
Later, the officer said he had a conversation with another officer who
gave him a description of the perpetrator as relayed by the complainant. The
officer stated that the description matched the injured person with regard to
his clothing and ethnicity.  The
detective assigned to the Tom Thumb robbery confirmed the link between Newsome
and the shooting at Tom Thumb.  Newsome
was arrested at John Peter Smith hospital and charged with two counts of
aggravated robbery along with the use or exhibition of a deadly weapon and a
repeat offender notice.  

Prior to trial, the State
waived the first count of aggravated robbery and the deadly weapon charge.  In accordance with Newsome=s pretrial motion to suppress, the trial court heard evidence
regarding Newsome=s hospital
statements.  At the close of a Jackson
v. Denno[3]
hearing, the trial court specifically concluded that Officer Petty=s presence at the hospital was unrelated to the robbery investigation,
that the officer did not have Newsome in custody, and that Newsome volunteered
that he had been shot.  Therefore, the
trial court ruled Newsome=s oral
statements admissible.  Newsome pleaded
not guilty; however, the jury found him guilty and assessed his punishment at
forty-two years=
confinement.  This appeal followed.








III.  Motion to Suppress

In his single point, Newsome
asserts error on the part of the trial court by failing to suppress his oral
statement at the hospital.  Specifically,
he frames his point thusly: 

[Newsome]
contends the trial court erred by failing to grant his motion to suppress the
oral statement he made to a police officer while under extreme medical duress.
[Newsome] further asserts that a review of this unique situation establishes,
in and of itself, a custodial interrogation requiring the police officer to
Mirandize [Newsome].

 

A. Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  Wiede v. State, 214 S.W.3d 17, 24B25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000), modified on other grounds by State v. Cullen,
195 S.W.3d 696 (Tex. Crim. App. 2006). 
Therefore, we give almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002).  But
when application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s rulings on those questions de novo. 
Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d
604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When, as here, the trial court makes explicit
fact findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s ruling, supports those fact findings.  Kelly, 204 S.W.3d at 818B19.  We then review the trial
court=s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 819.  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  State v. Stevens, 235
S.W.3d 736, 740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004). 

B. Analysis

Custody is one of the
triggers that necessitate Miranda warnings.  Miranda v. Arizona, 384 U.S. 436, 86
S. Ct. 1602 (1966).  The Texas Code of
Criminal Procedure sets forth the parameters for the use of statements at
trial.  Specifically, article 38.22,
entitled AWhen
statements may be used,@  reads in part A[n]othing in this article precludes the admission of a statement  . . . that does not stem from custodial
interrogation, or of a voluntary statement, whether or not the result of
custodial interrogation[.]@  Tex. Code Crim. Proc. Ann.
art. 38.22, ' 5
(Vernon 2005).  In Dowthitt v.
State, the court of criminal appeals stated

A person is in Acustody@ only
if, under the circumstances, a reasonable person would believe that his freedom
of movement was restrained to the degree associated with a formal arrest.  The Areasonable person@
standard presupposes an innocent person. . . .  

In the past, we have recognized four factors
relevant to determining custody:

 

(1) Probable cause to arrest,

 

(2) Subjective intent of the police,








(3) Focus of the investigation, and

 

(4) Subjective belief of the defendant.  

 

. . . [F]actors two and four have become
irrelevant except to the extent that they may be manifested in the words or
actions of law enforcement officials; the custody determination is based
entirely upon objective circumstances. 

 

The determination of custody must be made on an
ad hoc basis, after considering all of the (objective) circumstances. . .
.  

 

We have outlined at least four general situations
which may constitute custody:  (1) when
the suspect is physically deprived of his freedom of action in any significant
way, (2) when a law enforcement officer tells the suspect that he cannot leave,
(3) when law enforcement officers create a situation that would lead a
reasonable person to believe that his freedom of movement has been
significantly restricted, and (4) when there is probable cause to arrest and
law enforcement officers do not tell the suspect that he is free to leave.  Concerning the first through third
situations,  Stansbury indicates
that the restriction upon freedom of movement must amount to the degree
associated with an arrest as opposed to an investigative detention.   

 

931 S.W.2d 244, 254B55 (Tex. Crim. App. 1996) (citations omitted); see also  Stansbury v. California, 511 U.S. 318,
322B24, 114 S. Ct. 1526, 1528B30 (1994).  








Custodial interrogation is Aquestioning initiated by law enforcement officers after a person has
been taken into custody or otherwise deprived of his freedom of action in any
significant way.@  Miranda, 384 U.S. at 444, 86 S. Ct. at
1612.  The United States Supreme Court
has delineated a two part inquiry to determine whether a suspect is in custody:

(1)
what were the circumstances surrounding the interrogation, and 

 

(2)
under those circumstances would a reasonable person feel he or she was not free
to terminate the questioning and leave.

 

See Thompson v. Keohane, 516 U.S. 99, 112, 116 S. Ct. 457, 465 (1995); Stansbury, 511
U.S. at 322B23, 114 S.
Ct. at 1528B29.  The first inquiry is a factual determination
regarding the circumstances surrounding the interrogation.  See Thompson, 516 U.S. at 112, 116 S.
Ct. at 465.  








A distillation of the
foregoing discussion, as applied to Newsome and as asserted in this appeal, is
that he was in custody because he reasonably believed that his freedom of
movement was restrained by his medical condition.  However, it is apparent that for custody to
attach to the lack of freedom of movement, the restriction must be created by
the police officer, as exemplified by the third example given in Dowthitt,
Awhen law enforcement officers create a situation that would
lead a reasonable person to believe that his freedom of movement has been
significantly restricted.@  931 S.W.2d at 255 (emphasis supplied).  Likewise, we hold that Dowthitt=s first example, Awhen the suspect is physically deprived of his freedom of action in
any significant way,@ implicitly
refers to a deprivation created by the police officer.  Id. 


In Guerrero v. State,
Trooper Davis testified that he went to the emergency room of McKenna Memorial
Hospital in New Braunfels to identify persons who had been injured in an
accident.  605 S.W.2d 262, 265 (Tex.
Crim. App. [Panel Op.] 1980).  There were
several persons present in the emergency room when Davis entered.  Id. 
He asked whether anyone knew who was driving the car that had been in
the accident.  Guerrero answered that he
was the driver.  Id.  The court reasoned as follows in concluding
that Guerrero=s statement
should not be suppressed:

Davis asked the question as a
part of his required investigation of the facts of the accident.  When [Guerrero] made the statement, the
investigation had not shifted from the investigatory to the accusatory or
custodial stage.  Davis did not arrest
appellant until later, when he decided that appellant was intoxicated.  The statement was not the product of
custodial interrogation and was admissible.








Id.; see
also Yarborough v. State, 178 S.W.3d 895, 899B902 (Tex. App.CTexarkana
2005, pet. ref=d) (holding
that article 38.22 did not apply because Yarborough=s movements were restrained only to the extent that he received
medical treatment for his stab wounds and nothing in the record suggested that
his statements were made in response to custodial interrogation); Redmond v.
State, 30 S.W.3d 692, 696B97 (Tex. App.CBeaumont
2000, pet. ref=d) (holding
that there was no custodial interrogation when officer asked defendant, who was
neither in custody nor under arrest at the time, but who was in an ambulance
with two broken legs, strapped into a gurney, what had happened); Vessels v.
State, 938 S.W.2d 485, 486, 488 (Tex. App.CEl Paso 1996, no pet.) (concluding that defendant=s statements were not the result of custodial interrogation when he went
to a hospital for treatment of a gun shot wound to his hand and there was no
showing on the record that he was in police custody, that he was restrained,
that a guard was posted, that he was told not to leave, that he was handcuffed,
or that he was under arrest at the time he told the police what had occurred).  But see Clemmer v. State, 645 S.W.2d 918,
919B20 (Tex. App.CFort Worth
1983, no pet.) (excluding Clemmer=s statements made in the emergency room after an officer formally
placed him under arrest and advised him of his rights).

Here, the trial court read the following findings into the record:

 

The
officer was there on an unrelated incident. 
He was told that there was a shooting victim or shooting person
there.  He went to try to ascertain
whether this person was a victim, talk with him.  Mr. Newsome volunteered that he was
shot.  And he was not in custody at that
time.  And as such, he was not subject to
custodial interrogation.  And the Court=s
going to make a finding that the statement that he gave was a voluntarily made
statement and was admissible as a matter of both law and fact.

 








Applying the relevant standard of review, we hold
that Newsome was not in custody, hence not subject to custodial interrogation,
and hence not subject to the parameters of Miranda and article
38.22.  See Wiede, 214 S.W.3d at
24; Kelly, 204 S.W.3d at 818.  For
the foregoing reasons, Newsome=s sole point is overruled.

IV.  Conclusion

Having overruled Newsome=s sole point, we affirm the trial court=s judgment.  

 

BOB MCCOY

JUSTICE

 

PANEL:
DAUPHINOT, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
November 20, 2008

 











[1]See Tex.
R. App. P. 47.4.





[2]More
specifically, the evidence later showed that a retired Arlington resident
stopped by a local Tom Thumb grocery store. 
As he began to walk toward the store, a gun-toting would-be robber
accosted him in the parking lot.  The
would-be victim pulled out his own weapon and shot the robber three times, and
the perpetrator, Newsome, escaped the scene, leaving a trail of blood.





[3]378 U.S. 368, 84 S. Ct. 1774
(1964).